WEBB BARRON SEARCY, JR.,

      Plaintiff,

v.                                  Case No. 2:14-cv-15045

SGT. JOSEPH WIMMER,
in his individual capacity,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the defendant's Motion for Summary Judgment [ECF No. 59]. This matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Standing Order of this court entered on April 18, 2014 [ECF No. 4]. For reasons appearing to the court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN**. For the reasons stated below, the defendant's Motion [ECF No. 59] is **DENIED**.

I.      Factual and Procedural Background[1]

The plaintiff, Webb B. Searcy, is an inmate housed at the Mount Olive

---

[1] The facts are set forth in the light most favorable to the plaintiff and as presented by the plaintiff. Because the plaintiff is proceeding *pro se*, his documents must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

Correctional Complex ("MOCC") in Mount Olive, West Virginia. This matter is proceeding on Searcy's verified Amended Complaint [ECF No. 15]. The Amended Complaint alleges that, on June 3, 2013, Searcy attempted to enter MOCC's commissary as it was closing. Searcy got halfway through the doorway when the defendant, Sgt. Joseph Wimmer, "turned and put his left hand up and violently pushed [him] back." Am. Compl. 4, ¶ 6 [ECF No. 15]. Searcy asked Wimmer why he had pushed him and stated that it was an assault. *Id.* at 4, ¶¶ 7–8. Wimmer responded by using a racial slur and telling Searcy he better learn to shut his mouth. *Id.*

Searcy then threatened to report the incident. *Id.* at 4–5, ¶ 9. Wimmer again told him to shut up and then "pushed [him] so hard that [he] lost [his] balance and busted [his] head open and lost consciousness for approximately 60 to 90 seconds." *Id.* at 4–5, ¶ 10.[2] Wimmer then stood over Searcy and stated, "I told you to shut up. . . ." *Id.* at Ex. 4. He again used expletives and racial slurs to address the unconscious plaintiff. *Id.* Searcy contends that when he regained consciousness, he was disoriented, in extreme pain, and the back of his head was bleeding. *Id.* at 5, ¶ 11. Wimmer was "standing over top of [him] with a look of both anger and satisfaction that he had caused [him] bodily harm." *Id.* According to Searcy, he feared being assaulted again, so he went back to his housing unit to report Wimmer's actions. *Id.* at 5, ¶ 12.

---

[2] Searcy's allegations concerning this second use of force and being knocked unconscious were conspicuously absent from his initial Complaint. *See* Compl. [ECF No. 2].

Searcy alleges that two other inmates, Robert Cummings and Eric Holmes, and the commissary manager, Laura Ellis, witnessed this incident. *Id.* at 5, ¶ 13. Among other documents attached to the Amended Complaint, Searcy included his own affidavit and the affidavits of inmates Cummings and Holmes, which mirror his allegations. *See id.* at Exs. 2, 4, 10. He also attached two inmate medical services request forms, dated June 4, 2013 and June 13, 2013, respectively, detailing his alleged injuries. *Id.* at Exs. 8, 9. Searcy also attached a grievance dated June 3, 2013, concerning this incident. *Id.* at Ex. 1(a). Searcy further claims that Wimmer filed a false disciplinary violation report against him with respect to this incident, which was subsequently dismissed after commissary manager Laura Ellis testified that Wimmer had lied and that he assaulted Searcy without provocation. *Id.* at 5, ¶ 14, Ex. 3.

Searcy's Amended Complaint alleges that Wimmer's conduct constitutes an excessive use of force in violation of the Eighth Amendment of the United States Constitution. He seeks monetary damages from Wimmer in his individual capacity and an order requiring any necessary medical treatment for injuries sustained from this incident. *Id.* at 6, Count One, 8–9.[3]

On April 13, 2017, Wimmer filed a Motion for Summary Judgment [ECF No. 59] and a Memorandum of Law in support thereof [ECF No. 60], asserting that Searcy's Eighth Amendment claim fails as a matter of law and that Wimmer is

---

[3] Searcy's supervisory liability claims against David Ballard and Major Rhodes contained in Count Two of the Amended Complaint were previously dismissed.

entitled to qualified immunity. Wimmer's motion documents largely assert that Searcy has not demonstrated any credible evidence to support the version of facts set forth in his Amended Complaint. Wimmer argues that the force used against Searcy on June 3, 2013, was "minor physical contact" necessary to gain his compliance with the order prohibiting him from entering the commissary because it was closed. Sgt. Joseph Wimmer's Mem. Supp. Mot. Summ. J. 4, 9–11 ("Wimmer's Mem.") [ECF No. 60]. Wimmer further contends that Searcy has not substantiated that he suffered any injury from this incident. *Id.* at 11.

Wimmer's motion documents include eleven exhibits consisting of Wimmer's affidavit [ECF No. 59-1]; the violation report prepared by Wimmer after this incident on June 3, 2013 [ECF No. 59-2]; Searcy's June 3, 2013 grievance concerning this incident [ECF No. 59-3]; a transcript of Searcy's disciplinary hearing on July 17, 2013 [ECF No. 59-4]; two inmate medical services request forms dated June 4, 2013, and June 13, 2013 [ECF No. 59-5]; an affidavit of Donna Warden, Health Services Administrator for Wexford Health Sources, Inc., indicating that Searcy never submitted the two inmate medical services request forms [ECF No. 59-6]; Searcy's responses to the defendants' discovery requests and various certificates of service related thereto, and an affidavit of Tom Chandler, records custodian for the MOCC post office, concerning Searcy's outgoing legal mail [ECF Nos. 59-7–59-10][4]; and

---

[4] Wimmer attempts to argue that Searcy objected and provided incomplete, evasive and untimely responses to these discovery requests, which should support a finding that Searcy's allegations are not credible and that he has no evidence to support the same. However, defendant Wimmer took no action to compel more complete responses from Searcy with respect to these discovery requests, or to exclude

4

copies of case law relied upon in Wimmer's brief [ECF No. 59-11].

As supported by his affidavit, Wimmer asserts that, at approximately 7:30 p.m., while he was assisting in closing the commissary, Searcy attempted to come in to make a purchase. Wimmer's Mem. Ex. A, at 1 [ECF No. 59-1]. Wimmer advised Searcy that the commissary was closed and to step back from the door. *Id.* at 2. Searcy then lunged forward with his right shoulder attempting to push his way in, so Wimmer placed his left hand on Searcy's right shoulder and pushed him back from the door. *Id.* Searcy then backed away and stated "don't you ever put your [expletive] hands on me! That's assault." *Id.*

Wimmer denies using a racial slur or that any second use of force occurred. *Id.* He further states that Searcy did not request any medical treatment at that time, and he is not aware of him requesting any such treatment thereafter. *Id.* at 3. Wimmer contends that his version of the facts is more consistent with the allegations of Searcy's initial Complaint and is further supported by Searcy's grievance filed on the date of the incident and the testimony provided by Searcy, Cummings, and Ellis at the disciplinary hearing on July 17, 2013. *Id.* at 2–3; *see* Wimmer's Mem. Ex. C; Wimmer's Mem. Ex. D.

Pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Searcy was advised of his right and obligation to file a response to any motion for summary judgment filed by the defendant. Order [ECF No. 56]. On November 28,

---

evidence or reliance on the same. Thus, the court declines to rely upon this argument in support of summary judgment herein.

2017, Searcy filed a Brief in Opposition to the Motion for Summary Judgment [ECF No. 66], a Declaration in support thereof [ECF No. 67], and a Statement of Disputed Facts [ECF No. 68] (collectively referred to herein as "Searcy's Response"). Searcy's Response echoes the allegations of his Amended Complaint and asserts that there is a material factual dispute concerning what force was used and why.

On December 4, 2017, Wimmer filed a Reply, reiterating his position that Searcy has not offered more than a scintilla of evidence to support his version of the facts and that nothing in his Response creates a genuine issue of material fact. Reply [ECF No. 72]. Accordingly, Wimmer again asserts that he is entitled to judgment as a matter of law on Searcy's claim against him. This matter is ripe for adjudication.

## II. Legal Standard

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the court draws any permissible inferences from the facts in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

III. Discussion

    A.   Eighth Amendment Claim

Searcy alleges that Wimmer's conduct violated his rights as guaranteed by the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment and forbids the unnecessary and wanton infliction of pain. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 319 (1986). "An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991) ("Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components.").

The objective component requires the court to determine if the alleged deprivation is sufficiently serious and looks at whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Thus, the inquiry centers on the subjective component because, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" regardless of whether the resulting injuries are significant. *Id.* at 9.

Under the subjective component, "the state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley*,

475 U.S. at 322). Thus, when prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley*, 475 U.S. at 320–21; *Wilkins*, 559 U.S. at 37. There are four factors that courts should weigh in making this determination: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the threat reasonably perceived by the responsible official, and (4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *see also Williams*, 77 F.3d at 762.

When evaluating the *Whitley* factors in this case, it clear that there are material disputes of fact in the record. Furthermore, based on the plaintiff's account, which is corroborated by witnesses, it is possible Wimmer used more force than was necessary and did so with malicious intent.

As to the first factor—the need for the application of force—there is a dispute of fact as to whether any force was needed. Based on Searcy's corroborated allegations, Wimmer pushed Searcy the first time to remove him from the commissary. *See* Am. Compl. at Ex. 2. Wimmer pushed Searcy the second time because he threatened to report him and had not obeyed Wimmer's order to "shut up." *See id.* at Ex. 2, Ex. 4, Ex. 10. Wimmer's malicious intent is further indicated by his use of expletives and derogatory racial slurs against Searcy. *See id.* at Ex. 2, Ex. 4. If, as he alleges, Searcy was complying with all rules at the time of the second shove, there was no need for the use of force. Wimmer, however, asserts that there

was no second shove, and the first shove was necessary because Searcy "created a situation when he attempted to enter the commissary after hours after being told it was closed." Wimmer's Mem. 7–8.

The second factor—the proportionality of the force needed—follows directly from the amount of force needed. Wimmer asserts that he only used that force which was reasonably necessary to obtain Searcy's compliance and remove him from the commissary. *Id.* at 11. However, regardless of the proportionality of Wimmer's first use of force, the evidence in the light most favorable to Searcy demonstrates a subsequent use of force that was powerful enough to knock Searcy to the ground. If no force was needed, then any force used was excessive.

An examination of the third *Whitley* factor—the threat reasonably perceived—reveals another dispute of fact. Wimmer contends that he perceived Searcy's conduct as a threat to the order and security of the prison because he refused Wimmer's order to leave the commissary and "there was no indication that [he] intended to immediately cooperate with Sgt. Wimmer. Rather, the evidence demonstrates that Inmate Searcy intended to engage in a verbal altercation with Sgt. Wimmer and refused to comply with Sgt. Wimmer's orders." *Id.* at 15. This occurred in a "hectic" environment where he "was attempting to close the commissary alone around multiple unrestrained inmates[.]" *Id.* Thus, he contends that he responded appropriately to Searcy's "insubordination." *Id.* Conversely, Searcy claims that Wimmer pushed him violently out of the commissary "with no provocation." Am. Compl. Ex. 4; *see* Am. Compl. Ex. 1(b); Ex. 2; 10. Furthermore, the second shove was

9

a response to Searcy's threat to report Wimmer. *See* Am. Compl. Ex. 2; Ex. 4; Ex. 10. Under Searcy's articulation of the facts, a reasonable officer would not have perceived his actions as a threat provocative of a forceful response.

As to the final factor—any efforts to temper the use of force—Wimmer asserts that he tempered his response because he could have used more invasive, painful and extreme measures, but he chose to exercise the least amount of force necessary. Wimmer's Mem. 15–16. According to Searcy, however, Wimmer pushed him abruptly twice and without first providing a verbal command. Am. Compl. Ex. 2; Ex. 4; Ex. 10. Thus, taking the facts in the light most favorable to Searcy, no efforts to temper were made by Wimmer.

Wimmer challenges the credibility of Searcy's allegations and evidence, offering as support his own affidavit and the transcript of Searcy's disciplinary hearing, which included testimony from Cummings and Ellis that does not indicate a second use of force or the use of racial slur by Wimmer during this incident. However, this court cannot weigh the credibility of the evidence at this stage of the proceedings. Rather, these are questions for a jury to decide. Therefore, taking the evidence in the light most favorable to Searcy, there are genuine issues of material fact concerning whether the force Wimmer used was constitutionally excessive. Moreover, a reasonable factfinder could infer from the comments that Wimmer allegedly made to Searcy, that such force was used maliciously and sadistically and not solely for the purpose of restoring order.

B.  Qualified Immunity

Wimmer further asserts that Searcy's claim against him is barred by the doctrine of qualified immunity. Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of discretionary functions unless they are "plainly incompetent" or "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id.* If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.*

As explained above, there are genuine issues of material fact concerning whether Wimmer's conduct violated Searcy's Eight Amendment Right to be free from excessive force. Furthermore, this right was clearly established on June 3, 2013, the date of the incident. It is well established that prisoners have a right not to be assaulted by their captors, especially when no provocation is present. *See Thompson v. Virginia*, 878 F.3d 89 (4th Cir. 2017) (holding that this right was clearly established

by April 8, 2010); *see also Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'"); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A reasonable officer would have known from Supreme Court precedent that the Eighth Amendment prohibits malicious acts of violence. *See, e.g.*, *Hudson*, 503 U.S. at 4, 12 (holding that an officer used excessive force when he punched an inmate in the face); *Wilkins v. Gaddy*, 559 U.S. 34, 35, 37 (2010) (holding that an officer's use of physical force against an inmate who had merely requested a grievance form constituted excessive force).

Therefore, I **FIND** that Wimmer is not entitled to qualified immunity on Searcy's claim against him.

IV. **Conclusion**

For the reasons stated herein, Wimmer's Motion for Summary Judgment [ECF No. 59] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: March 22, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE